State v. Carnes

STATE OF NORTH CAROLINA v. DAHL THOMAS CARNES

No. 7326SC152

(Filed 25 April 1973)

1. Witnesses § 8— adverse witness — scope of examination — limitation proper
   N. C. law permits a broad scope of cross-examination of a witness who has offered testimony detrimental to a defendant's case, but the trial court in a common law robbery case did not improperly restrict the scope of defendant's cross-examination or his efforts to impeach an adverse witness.

2. Criminal Law § 46— flight of alleged accomplice — testimony not prejudicial
   Testimony of a detective dealing with the absence from trial of an alleged accomplice was not prejudicial to defendant, particularly where defendant himself testified with respect to the matter.

3. Criminal Law § 169— exclusion of testimony — failure to show what testimony would have been — no error
   The court on appeal is unable to determine that exclusion of testimony tending to establish defendant's reputation was prejudicial where the record does not show what the testimony would have been.

4. Criminal Law § 117— instruction on accomplice testimony — no error
   Trial court's instruction concerning the scrutiny of the testimony of an accomplice was proper.

APPEAL by defendant, Dahl Thomas Carnes, from *Snepp, Judge,* 11 September 1972 Session of Superior Court held in MECKLENBURG County.

The defendant, Dahl Thomas Carnes, was tried under a bill of indictment charging him with the common law robbery of Judith Thompson Barbaree on 22 November 1971. Barbaree testified as follows: She was the manager of Uncle John's Pancake House (now The Homestead Family Restaurant) located at 2501 East Independence Boulevard in Charlotte on 22 November 1971. She had known defendant for several years and he had been a regular customer of the restaurant for at least a year. "[H]e came in the restaurant three, four or five times a day every day except maybe Sunday. He came in those three, four or five times a day with friends he had, mostly just to drink coffee. . . . He had done that during the week prior to November 22, 1971. Prior to November 22, 1971 he had come in to drink coffee practically every day for a year."

On the morning of the robbery Miss Barbaree noted that the defendant was in the restaurant having coffee with a George Spivey. She usually went to the bank around 9:00 or 9:30 a.m. to deposit the previous day's receipts but on this particular day she was not able to go until around 11:30 a.m. Spivey left several minutes before she did, and defendant walked out with her. She went to her car where an assailant grabbed the bag containing the money. There was a brief struggle and the robber fled on foot with the moneybag. Defendant, who had gone to his car nearby, chased the assailant on foot upon hearing Miss Barbaree holler. Miss Barbaree also gave chase and she attempted to flag down a truck to secure aid in pursuing the robber, but the truck swerved toward her and she was forced to jump out of its path. She stated that George Spivey was the driver of the truck. Meanwhile, defendant had returned to his car. He caught up with Miss Barbaree, told her to return to the restaurant and call the police, and that he would pursue the robber in his car.

Jeff Young, who was also charged with this robbery, testified for the State. He stated that Spivey drove him to the Pancake House on this particular morning at around 9:00 or 9:30 a.m. and that Spivey introduced him to defendant Carnes. He stated: "After I got in the car the defendant Carnes told me how he planned to do the job and everything, explained that to me. He told me that he was going to have to go in

there and let me know when Miss Barbaree would be ready to come out and he was going to stop her and talk to her and give me time enough to come snatch the money bag. I didn't know exactly when Miss Barbaree was going to be coming out but we had it set up. Spivey was standing out, outside the Pancake House at the door so he could see when she got ready to come out and he would leave and go to his truck so he could be able to pick me up and that I would know after he moved, going towards the truck, I would know she was coming then." Young stated that he stayed in the car for about two hours waiting to put the plan into effect. He further stated that he fled on foot after robbing Miss Barbaree. Several other witnesses were called to corroborate various aspects of Young's testimony.

Defendant took the stand in his own behalf and testified as follows: He was in the restaurant at about 9:30 a.m. on the morning of 22 November with George Spivey. He testified that a Mr. Marus, a friend of his who was in the real estate business, was to have met him and Spivey to discuss Marus' handling the sale of Spivey's house. He said that he went outside with Miss Barbaree when she was going to the bank at 11:30 a.m. He heard Miss Barbaree holler and he chased the robber on foot and then in his car. He believed the robber was fleeing in a 1969 Mustang but he was unable to apprehend him. He denied ever meeting with anybody before going into the restaurant. He stated that Spivey left 30 to 40 minutes before he did and that he had never seen Young until the moment of Young's attack against Miss Barbaree. In essence he denied having any part in the robbery.

From a verdict of guilty defendant appealed.

*Robert Morgan, Attorney General, by Rafford E. Jones, Assistant Attorney General, for the State.*

*Paul L. Whitfield for defendant appellant.*

BROCK, Judge.

[1] Defendant brings forth four assignments of error. The first assignment alleges that the trial court improperly restricted the scope of defendant's cross-examination and his efforts to impeach an adverse witness. Defendant is correct in

State v. Carnes

arguing that North Carolina law permits a broad scope of cross-examination of a witness who has offered testimony detrimental to a defendant's case. *State v. Roberson,* 215 N.C. 784, 3 S.E. 2d 277. *See* 1 Stansbury, N. C. Evidence, §§ 35, 38, 42 (Brandis Revision 1973), and 7 Strong, N. C. Index 2d, Witnesses, § 8. But the exceptions relied upon by the defendant do not indicate that the court unreasonably limited the scope of his cross-examination or infringed upon his reasonable opportunity to impeach the adverse witness.

[2] The second assignment of error is directed to the testimony of a Charlotte detective dealing with the absence of the alleged accomplice Spivey. Defendant has failed to demonstrate how the testimony relating to Spivey's absence from trial may have prejudiced his case. We note also that defendant himself testified on cross-examination, without objection, concerning Spivey's absence. This assignment of error is overruled.

[3] The next assignment of error is directed to the trial court's failure to allow testimony tending to establish defendant's reputation. Conceding *arguendo* that this testimony should have been admitted, defendant has failed to include in the record what the testimony would have been. This court therefore is unable to determine that its exclusion was prejudicial. *State v. Love,* 269 N.C. 691, 153 S.E. 2d 381. *See* 3 Strong, N. C. Index 2d, Criminal Law § 169.

[4] The final assignment of error relates to the charge. Defendant excepts to the refusal of the court to give his requested instruction concerning the scrutiny of the testimony of an accomplice. The instruction given by the court was similar to the one approved by the Supreme Court in *State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633. The court's instruction on this point is adequate and complete. Defendant also argues that the trial judge failed to give equal stress to the contentions of defendant. It appears to us that the charge of the court fairly summarized the evidence and fairly reviewed the contentions of the parties.

In our opinion defendant's trial was free from prejudicial error.

No error.

Judges PARKER and HEDRICK concur.